Keating, J.
James Durham, in his complaint, alleged that he fell from the respondent’s first-story loft window as a result of the respondent’s negligence in failing to maintain a proper and secure anchor on the outside of the window to which plaintiff could attach his safety belt. He further alleged that respondent violated section 202 of the Labor Law (dealing with the requirement of anchors) and the Rules and Regulations of the Industrial Code of the State of New York.
Rule 21.6 of the Industrial Code (12 NYCRR 21.6 [a] [2] [iii]) is relevant to this case. It requires that a window such as the one involved here shall afford an unobstructed passage of not less than 30 inches from the window sill.
At the trial it was established (and is not disputed) that the required anchor was properly and firmly in place after the accident. It was, however, also established that the respondent had placed wooden blocks on the frame of the window so that the lower half opened to a maximum of 26 inches, 4 inches short of the minimum 30-inch requirement.
The case was submitted to the jury upon the theory, among others, that it might find the respondent’s conduct in blocking the window opening negligence which was the proximate cause of the accident. Reversal in the Appellate Division is predicated on the ground ‘ ‘ that there was insufficient evidence to sustain a finding that the violation was the proximate cause of the accident”. Two Justices dissented, taking the position with which we agree, that the evidence presented a factual question on the issue of proximate cause.
*436 It appears, quite simply, that in attempting to reach outside the window in order to attach his safety belt to the anchor, which was 51 inches above the Avindow sill, plaintiff lost his balance and fell to the ground beloAV. Rule 21.10 of the Code (12 NYCRR 21.10 [c]) requires that the anchor be placed no higher than 51 inches above the window sill. Each anchor is to be located so as to provide easy attachment and removal of the belt terminal (12 NYCRR 21.10 [d]) and located so that it shall not be necessary to extend more than one arm beyond the sash opening (12 NYCRR 21.10 [e]).
Plaintiff testified that after opening the window as far as it would go (26 inches) he stuck his head out and attempted to hook up to the anchor, but that he could not reach it and as he kept trying he lost his balance and fell. It also appears that the length of plaintiff’s arm, measured from the inside of his armpit to the end of his fingers, was no more than 2 feet, 10 inches.
It seems clear that there is a close relationship between requirements regulating window openings and the heights of anchors. All are obviously intended to maximize safety and minimize risks in an inherently perilous undertaking. If window openings do not meet requirements, anchor heights will be equally off in terms of what is required for safe operations. Where it becomes necessary for a window-washer to attempt contortions and manipulations in order to reach an anchor, we do not see how a ruling can be justified, as a matter of law, that the absence of the extra 4 inches would not have made a difference. The question was clearly Avithin the province of the jury and reversal as a matter of law was error.
In addition to the height of the window, it appeared during ihe trial that a nail protruded from the window frame about 8% inches below the anchor hook and that there were scuff marks found on the nail after the accident. The Appellate Division said: “We do not see how the maintenance of a nail on the outside of the building, 8 inches below the anchor hook, constitutes a dangerous condition. And, even if it were, we cannot see how this defendant, being a tenant, can be held for the presence of the nail outside of the leased premises.”
In this connection, we think that the presence of the nail might very well have constituted a dangerous condition. As to the *437 respondent’s status as a lessee, however, that is another thing. Whether the respondent, as a tenant, would he liable for the nail would depend on the extent of its control over the building, i.e., whether or not it was sole tenant, and whether or not any control remained in the lessor (see Lowenhar v. Commercial Outfitting Co., 260 App. Div. 211, affd. 285 N. Y. 671; Schneier v. Owen Realty Co., 271 App. Div. 983). To these questions, the record does not supply answers.
The order of the Appellate Division should be reversed and the ease remitted to the Appellate Division for consideration of the facts.
Chief Judge Desmond and Judges Fuld, Yak Voorhis, Burke, Scileppi and Beruan concur.
Order reversed and case remitted to the Appellate Division for determination of the questions of fact, with costs in this court and in the Appellate Division.